DECISION
{¶ 1} In this original action, relator, Charles Steinbrunner, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying temporary total disability ("TTD") compensation and chiropractic treatment beyond November 4, 2004, based upon an alleged nonindustrial intervening injury. Relator also seeks an amended order granting TTD compensation and treatment beyond November 4, 2004.
 {¶ 2} On November 13, 2002, relator sustained an industrial injury while working for respondent Crown Equipment Corporation ("Crown"). The commission allowed relator's claim No. 02-877802, for "crushing injury of right lower leg; contusion of right thigh; contusion of right upper arm; contusion of back; sprain lumbar region (back)." Subsequently, an additional claim for "aggravation of pre-existing major depression" was allowed. Relator was awarded TTD compensation for his allowed conditions.
 {¶ 3} On June 14, 2004, Crown moved to terminate TTD compensation, arguing that relator's industrial injury had reached maximum medical improvement ("MMI"). Crown submitted the May 24, 2004 report of Dr. Lee Howard, a psychologist, and the March 25, 2004 report of Dr. Paul Hogya, who examined relator at Crown's request in support of its motion. A district hearing officer ("DHO") heard the matter on July 14, 2004. Two days later, the DHO issued an order terminating TTD compensation for relator's physical injuries, but continuing TTD for his psychological diagnosis.
 {¶ 4} Crown appealed, and the matter was submitted to a staff hearing officer ("SHO") on August 13, 2004. On August 17, 2004, the SHO issued an order affirming the DHO's finding of physical MMI, vacating the DHO's order regarding relator's depression, and finding psychological MMI as of August 14, 2004. Accordingly, the SHO terminated all TTD compensation for relator's allowed conditions. Relator administratively appealed the SHO's order, but the appeal was refused.
 {¶ 5} On September 2, 2004, relator filed a motion requesting additional allowances for "aggravation of pre-existing degenerative disc disease" and "aggravation of pre-existing facet osteoarthritis." The motion also sought approval of medical treatment for the requested additional allowances and payment of all associated medical bills. Relator sought TTD compensation, beginning July 14, 2004 and continuing, for the additional conditions. Relator supported his motion with an August 25, 2004 report by Dr. James E. Sauer, his treating chiropractor.
 {¶ 6} Two days prior, Crown filed a motion to terminate relator's chiropractic treatment.[1] In support of its motion, Crown submitted the July 12, 2004 report of Dr. Hogya, in which he stated that ongoing chiropractic care was not medically necessary or reasonably related to his November 2002 injury. On September 30, 2004, Dr. Hogya issued another report on behalf of Crown; this report included the doctor's conclusion that relator's industrial accident was not the proximate cause of the requested additional allowances for aggravation of pre-existing conditions.
 {¶ 7} On October 23, 2004, the commission mailed a "Notice of Hearing" for November 12, 2004, to both parties. In addition to the date, time and location of the scheduled hearing, the notice listed the issues to be heard:
1) Additional Allowance — AGGRAVATION OF PRE-EXISTING DEGENERATIVE DISC DISEASE
2) Additional Allowance — AGGRAVATION OF PRE-EXISTING FACET ARTHRITIS
3) Request For Temporary Total
4) Payment Of Bills
5) Auth[orization] Of Treatment And/Or Diagnostic Testing
6) Necessity Of Treatment
Relying on various doctors' reports, the DHO issued an order granting relator's additional allowances and ordered the payment of TTD compensation based on those allowances. The DHO denied Crown's motion to terminate chiropractic treatment.
 {¶ 8} On November 22, 2004, Crown appealed the DHO's order. The commission accepted the appeal and mailed a new notice of hearing to the parties. The hearing was scheduled before an SHO for January 4, 2005. The issues listed for hearing were identical to those previously identified: relator's requests for additional allowances for aggravation of pre-existing degenerative disc disease and facet arthritis, TTD compensation, payment of medical bills, and authorization for treatment and diagnostic testing, in addition to Crown's request for termination of chiropractic treatment ("necessity of treatment").
 {¶ 9} Three days after the hearing, the SHO issued his order vacating the DHO's previous order. The SHO granted relator's motion to the extent that the additional conditions were allowed, with commensurate TTD compensation and coverage of chiropractic treatment. However, the SHO also found that relator suffered an intervening injury that significantly aggravated his allowed conditions. Based on this finding, the SHO granted Crown's motion to the extent that chiropractic treatment after November 4, 2004 was not payable. Furthermore, while relator was granted TTD compensation, it would only be payable through November 4, 2004. Both parties appealed the order, but the commission refused further administrative appeals.
 {¶ 10} On June 15, 2005, relator filed this mandamus action, seeking to have the commission's order vacated and an amended order issued. Pursuant to Civ.R. 53 and Loc.R. 12(M) of the Tenth District Court of Appeals, the matter was referred to a magistrate. On January 11, 2006, the magistrate issued his decision, including findings of fact and conclusions of law. (Attached as Appendix A.) Therein, the magistrate found that the commission lacked jurisdiction to adjudicate the termination of relator's right to participate in the workers' compensation system because he was not given proper notice that the issue would be heard.
 {¶ 11} The magistrate additionally found that the commission abused its discretion in denying TTD compensation and chiropractic treatment beyond November 4, 2004, as there was no evidence to support that decision. The magistrate observed that the commission's decision to deny compensation and treatment after that date was premised solely upon Dr. Sauer's November 17, 2004 report. Therein, Dr. Sauer made a note on November 4, 2004 indicating that relator's problem was significantly worse after tripping over his dog's leash. Dr. Sauer stated: "Due to this fall, [relator] significantly aggravated his lower back."
 {¶ 12} The magistrate remarked that, although Dr. Sauer's report contained no indication or medical opinion that the significant aggravation amounted to an intervening injury, the SHO nevertheless concluded that relator's fall "sever[ed] disability related to the allowed back conditions within this claim." Noting that Dr. Sauer never medically determined that the "significant aggravation" caused relator's disability or need for treatment — rather than the original industrial accident itself — the magistrate determined that the SHO's conclusion was speculative. Accordingly, the magistrate found the commission's order was not supported by "some evidence" necessary to withstand challenge.
 {¶ 13} Thus, the magistrate recommended that this court issue a writ of mandamus ordering the commission to vacate its January 4, 2005 order to the extent that TTD compensation and chiropractic treatment were denied beyond November 4, 2004. The magistrate further recommended that the question of continued compensation and treatment be remanded to the commission for reconsideration.
 {¶ 14} Both the commission and Crown filed timely objections to the magistrate's decision. The commission submits that the magistrate erred in finding that Dr. Sauer's report did not contain some evidence upon which the commission could determine that relator suffered an intervening injury. Crown raises the same objection. Crown additionally challenges the magistrate's conclusion that the commission lacked jurisdiction to consider relator's right to participate and contends that the magistrate failed to address the availability of an adequate remedy at law.
 {¶ 15} We first address Crown's objection regarding the commission's jurisdiction. In essence, Crown asserts that relator was on notice that the issue of an intervening injury would be discussed and adjudicated by the commission because Crown contested relator's request for the allowance of additional conditions and continuation of chiropractic treatment. This implied notice, along with the fact that all medical records relied upon by the commission in reaching its conclusion were readily available to relator prior to the hearing, negated any surprise or impaired right to assemble evidence and prepare arguments. Thus, Crown objects to the magistrate's finding that relator was not afforded his due process right to notice that the commission might terminate his right to participation in the state system, which, in turn, divested the commission of jurisdiction to adjudicate that issue.
 {¶ 16} Contrary to Crown's supposition, however, procedural due process requirements cannot be satisfied by implication. The due process rights conferred by the United States and Ohio Constitutions must be recognized and upheld during administrative proceedings such as those before the commission. State ex rel.Finley v. Dusty Drilling Co., Inc. (1981), 2 Ohio App.3d 323. As applied to proceedings before the commission, "[p]rocedural due process includes the right to a reasonable notice of hearing as well as a reasonable opportunity to be heard." Id. at 324-325. "Furthermore, the right to a reasonable opportunity to be heard includes reasonable notice of the time, date, location and subject matter of the hearing." State ex rel. LTV Steel Co. v.Indus. Comm. (1995), 102 Ohio App.3d 100, 103-104. Without reasonable notice of the hearing's subject matter, a party's right to appear and present well-supported and developed arguments endorsing his position is compromised.
 {¶ 17} Here, the notice of hearing stated that the following issues would be heard: whether to allow additional allowances for aggravation of pre-existing degenerative disc disease and of pre-existing facet arthritis, relator's request for TTD compensation, payment of bills and authorization of treatment related to those additional allowances, and necessity of further chiropractic treatment. Importantly, none of the subjects mentioned included the determination of relator's right to participate in the workers' compensation system. In fact, Crown had limited its argument at that point to terminating chiropractic treatment.
 {¶ 18} Crown's contention that the question of whether there was an intervening injury that effectively terminated relator's right to participate in the workers' compensation system was properly raised as a defense to the noticed issue of TTD compensation, and thus did not require procedural notice, fails. Without specific, actual notice that the issue of relator's right to participate based on an alleged intervening injury would be addressed — for the first time — on appeal of the DHO's previous order, relator would have no reason to anticipate that the issue would be adjudicated. See LTV Steel, supra, at 104. Evidence and arguments to support the right to receive benefits may very well differ from the evidence and arguments proffered to support an argument on the extent of benefits received. Thus, without actual notice that his right to participate was subject to scrutiny, he would have no reason to develop his arguments in support of his position on the matter.
 {¶ 19} The magistrate correctly decided the issue of whether relator received notice in compliance with procedural due process. The commission failed to issue proper notice; thus, it was without jurisdiction to adjudicate the issue of relator's right to participate. As such, Crown's objections are overruled.
 {¶ 20} Likewise, Crown's objection that the magistrate failed to address whether relator pursued his remedies at law is overruled. Since the commission did not have jurisdiction to adjudicate relator's right to participate, it follows that relator has no remedy at law. "The only decisions reviewable pursuant to R.C. 4123.519 [renumber as R.C. 4123.512] are those decisions involving a claimant's right to participate or to continue to participate in the fund." Afrates v. City of Lorain
(1992), 63 Ohio St.3d 22, paragraph one of the syllabus. Thus, relator correctly challenges the commission's decision through a writ of mandamus.
 {¶ 21} Finally, both Crown and the commission challenge the magistrate's conclusion that the commission abused its discretion in finding that relator sustained a non-industrial intervening injury based on Dr. Sauer's report. Both respondents contend that it is well within the province of the commission to weigh the evidence before it and resolve any questions of credibility. Moreover, respondents argue that it is within the commission's power to interpret the medical evidence to find a new injury occurred. Thus, respondents assert that the magistrate erred in concluding that Dr. Sauer's report does not support a determination that the incident in which relator tripped over his dogs was an intervening injury severing the causal relationship between relator's allowed conditions and his disability.
 {¶ 22} Respondents are certainly correct that the commission has the discretionary power of weighing the evidence to determine the pertinent facts. However, it is equally clear that the commission must have some medical evidence upon which to base those facts. This is an especially important consideration in cases questioning the causal relationship between an industrial injury and the claimed disability. "It is fundamental that there must be a causal connection between an injury arising out of and in the course of a workers' [sic] employment and his harm or disability." State ex rel. Webb v. Indus. Comm. (1991),76 Ohio App.3d 701, 703. Thus, the Supreme Court of Ohio has instructed that the record "must include evidence by competent medical witnesses that a probable relationship existed between the original accident and [the claimant's disabling condition]."State ex rel. Yellow Freight System, Inc. v. Indus. Comm.
(1998), 81 Ohio St.3d 56, 57, citing Fox v. Indus. Comm.
(1955), 162 Ohio St. 569, 575.
 {¶ 23} The same considerations must be made for questions of an alleged intervening injury. Just as there must be medical evidence to support the causal relationship between the original industrial accident and the claimed disability, there must be medical evidence to support a finding that a new injury has severed the causal connection and become the intervening cause of the resulting disability. Here, although respondents would have us believe that Dr. Sauer's November 17, 2004 report contains medical evidence that relator suffered a new and intervening injury when he tripped over his dogs, no such evidence is present.
 {¶ 24} Dr. Sauer's report merely opines that relator "significantly aggravated his lower back" by tripping over his dogs. This statement alone is not enough to support the commission's conclusion that relator suffered a new injury, let alone one that severed the causal connection between relator's industrial injury and his disability. However, as noted by the magistrate, the lack of evidence to support one conclusion does not automatically translate into the existence of evidence to support the opposite conclusion.
 {¶ 25} Thus, the issue of whether TTD compensation and payment for medical treatment should extend beyond November 4, 2004 must be remanded for further consideration. Additionally, if the employer wishes to challenge relator's right to participate in the workers' compensation system due to the alleged intervening injury, it may do so after ensuring the provision of proper notice.
 {¶ 26} Based on a careful consideration of the parties' objections and an independent review of this matter pursuant to Civ.R. 53, we find that the magistrate properly determined the pertinent facts and applied the appropriate law. Accordingly, we adopt the magistrate's decision as our own and issue a writ of mandamus ordering the commission to vacate its January 4, 2005 order to the extent that TTD compensation and authorization of chiropractic treatment are denied beyond November 4, 2004, and, in a manner consistent with this decision, enter an amended order granting or denying compensation and benefits beyond that date.
Objections overruled;
 writ of mandamus granted.
Klatt, P.J., and Brown, J., concur.
[1] Apparently, Crown re-filed the same motion on September 14, 2004.
 (APPENDIX A) IN THE COURT OF APPEALS OF OHIO TENTH APPELLATE DISTRICT
State of Ohio ex rel. Charles Steinbrunner, : Relator, : v. : No. 05AP-626 Industrial Commission of Ohio : (REGULAR CALENDAR) and Crown Equipment Corporation, : Respondents. :
 MAGISTRATE'S DECISION Rendered on January 11, 2006 Allotta, Farley Widman Co., L.P.A., Larry D. Farley andMichelle T. Sullivan, for relator.
Jim Petro, Attorney General, and Kevin J. Reis, for respondent Industrial Commission of Ohio.
Scheuer, Mackin Breslin LLC, and James G. Neary, for respondent Crown Equipment Corporation.
 IN MANDAMUS {¶ 27} In this original action, relator, Charles Steinbrunner, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order to the extent that it determines that relator sustained a nonindustrial intervening injury and, on that basis, denies temporary total disability ("TTD") compensation and chiropractic treatment beyond November 4, 2004, and to enter an amended order that grants TTD compensation and chiropractic treatment beyond November 4, 2004.
 {¶ 28} Findings of Fact:
 {¶ 29} 1. On November 13, 2002, relator sustained an industrial injury while employed as a factory worker for respondent Crown Equipment Corporation ("Crown"), a self-insured employer under Ohio's workers' compensation laws. Crown initially certified the industrial claim for "crushing injury of right lower leg; contusion of right thigh; contusion of right upper arm; contusion of back; sprain lumbar region (back)." The industrial claim is assigned number 02-877802.
 {¶ 30} 2. The industrial claim was subsequently allowed for "aggravation of pre-existing major depression."
 {¶ 31} 3. On June 14, 2004, Crown moved to terminate TTD compensation on grounds that the industrial injury had reached maximum medical improvement ("MMI").
 {¶ 32} 4. Following a July 14, 2004 hearing, a district hearing officer ("DHO") granted Crown's June 14, 2004 motion to the extent that the then allowed physical conditions of the claim were found to be at MMI; however, the DHO further found that the allowed psychological condition was not at MMI.
 {¶ 33} 5. Crown administratively appealed the DHO order of July 14, 2004.
 {¶ 34} 6. Following an August 13, 2004 hearing, a staff hearing officer ("SHO") issued an order vacating the DHO order of July 14, 2004. The SHO order of August 13, 2004 found that all of the then allowed physical conditions, as well as the allowed psychological condition, had reached MMI.
 {¶ 35} 7. On September 4, 2004, another SHO mailed an order refusing relator's administrative appeal from the SHO order of August 13, 2004.
 {¶ 36} 8. Earlier, on July 12, 2004, at Crown's request, Paul T. Hogya, M.D., issued a report in which he opined that ongoing chiropractic care is not medically necessary nor reasonably related to the industrial injury.
 {¶ 37} 9. On August 25, 2004, relator's treating chiropractor James E. Sauer, D.C., issued a report in which he opined that the industrial injury has aggravated relator's preexisting degenerative disc disease and facet osteoarthritis of the lumbar spine.
 {¶ 38} 10. On a C-84 dated August 30, 2004, Dr. Sauer certified TTD from July 1, 2003 to an estimated return-to-work date of November 28, 2004.
 {¶ 39} 11. On September 2, 2004, citing the reports from Dr. Sauer, relator moved that his industrial claim be additionally allowed for aggravation of preexisting degenerative disc disease and aggravation of preexisting facet osteoarthritis. Relator also moved for approval of chiropractic treatment for those conditions and payment of TTD compensation beginning July 14, 2004, the date that TTD had been previously terminated based on MMI grounds.
 {¶ 40} 12. On September 14, 2004, citing Dr. Hogya's July 12, 2004 report, Crown moved to terminate further chiropractic treatment.
 {¶ 41} 13. On October 23, 2004, the commission mailed notice of a hearing to be held before a DHO on November 12, 2004. The notice states:
ISSUES TO BE HEARD:
[One] Additional Allowance — Aggravation of pre-existing degenerative disc disease
[Two] Additional Allowance — Aggravation of pre-existing facet arthritis
[Three] Request For Temporary Total
[Four] Payment Of Bills
[Five] Auth Of Treatment And/Or Diagnostic Testing
[Six] Necessity Of Treatment
 {¶ 42} 14. Following a November 12, 2004 hearing, the DHO issued an order granting additional claim allowances, awarding TTD compensation, and approving continued chiropractic treatment.
 {¶ 43} 15. Crown administratively appealed the DHO order of November 12, 2004.
 {¶ 44} 16. On December 14, 2004, the commission mailed notice of a hearing to be held before an SHO on January 4, 2005. The notice states:
ISSUES TO BE HEARD:
[One] Additional Allowance — Aggravation of pre-existing degenerative disc disease
[Two] Additional Allowance — Aggravation of pre-existing facet arthritis
[Three] Request For Temporary Total
[Four] Payment Of Bills
[Five] Auth Of Treatment And/Or Diagnostic Testing
[Six] Necessity Of Treatment
 {¶ 45} 17. At the January 4, 2005 hearing, Crown submitted a report from Dr. Sauer dated November 17, 2004. Apparently, Dr. Sauer had prepared the November 17, 2004 report for Crown based upon his office notes. While the report addresses relator's visits to Dr. Sauer on five occasions, i.e., October 15, October 18, October 25, November 4 and November 10, 2004, the record before this court contains many more office notes. It appears that relator saw Dr. Sauer on an almost daily basis beginning October 15 through November 11, 2004.
 {¶ 46} 18. The November 17, 2004 report from Dr. Sauer states in its entirety:
On October 15th, Charlie mentioned that he was more able to walk without his cane. He attempted to walk into the office without using his cane to demonstrate. He has made marked improvement in his ambulatory status without the cane. He showed much appreciation in his smile. This demonstrates how he has shown improvement with his current treatment schedule.
On October 18th, he presented exacerbated from prolonged sitting in the American Legion. He mentioned that he went with his wife for an outing and by the end of the night, his lower back was in pain. He mentioned that he was very grateful to even be able to attend this outing.
On October 25th, "Mr. Steinbrunner reports that the problem is moderately worse today due to stooping and kneeling to let the dogs in and out all weekend." He mentioned that he has so much trouble letting his dogs in and out because they are small and move much faster than he can move. He has to attend to them when no one else is home.
On November 4th, "Mr. Steinbrunner reports that the problem is significantly worse today due to tripping over his dogs. He reports that his cane became entangled with the dog's leashes and he tumbled to the ground. He mentioned that he literally bent his finger backwards trying to catch himself on the way down. He went to the doctors to have it checked out." Due to this fall, he significantly aggravated his lower back.
On November 10th, "Mr. Steinbrunner reports that the problem is moderately worse today because he slept wrong. When I inquired deeper, he mentioned that he had been attempting to walk without his cane more last night and he woke up with shooting lower back pain. He stated that today his severe right lower back pain was a 7 on a 0 to 10 pain scale."
Even with all these exacerbations, he has still shown improvement with his current treatment program. I mentioned these exacerbations to demonstrate his future treatment needs. His condition is still improving, shown by his increase in ambulation and pain free ranges of motion and decrease in his pain. He is pushing himself more than ever to become less dependent on his cane and pushing himself to increase his walking distance. He also is increasing his activities of daily living. He is on the path to recovery and knows it.
I plan to continue his current treatment program unless improvement is not demonstrated. I will keep him on a daily program of spinal manipulation, physiotherapy, and rehab. I believe that his prognosis is favorable with continued treatment.
(Emphasis sic.)
 {¶ 47} 19. Following the January 4, 2005 hearing, the SHO issued an order stating that the DHO order of November 12, 2004 is vacated and that relator's September 2, 2004 motion and Crown's September 14, 2004 motion are granted to the extent of the order.
 {¶ 48} The SHO order of January 4, 2005 additionally allows the claim for "aggravation of pre-existing degenerative disc disease, lumbar spine; and aggravation of pre-existing facet arthritis, lumbar spine." The SHO order further states:
Chiropractic care after 11/04/2004 is found to be unrelated to allowed conditions within this claim, as the injured worker suffered an intervening fall that" significantly aggravated" the allowed back conditions within this claim.
This finding is based upon the 11/17/2004 report of Dr. Sauer.
Therefore, chiropractic treatment after 11/04/2004 is not found to be payable, as the injured worker suffered an intervening injury that was non-industrial and unrelated to this claim: The injured worker tripped and fell over his dogs at home on 11/04/2004.
* * *
As new conditions were added to the claim, new and changed circumstances are found to warrant payment of temporary total disability compensation from last date paid through 11/04/2004. The injured worker sustained an intervening injury 11/04/2004. The "substantial aggravation," as described by Dr. Sauer on 11/17/2004, is found to sever disability related to the allowed back conditions within this claim.
The 08/25/2004 C-9 of Dr. Sauer is GRANTED, as treatment of 08/25/2004 to 11/04/2004 is found to be reasonably related to allowed conditions within this claim.
(Emphasis sic.)
 {¶ 49} 20. Both relator and Crown administratively appealed the SHO order of January 4, 2005. On January 27, 2005, another SHO mailed an order refusing the administrative appeals.
 {¶ 50} 21. On June 15, 2005, relator, Charles Steinbrunner, filed this mandamus action.
Conclusions of Law:
 {¶ 51} It is the magistrate's decision that this court issue a writ of mandamus, as more fully explained below.
 {¶ 52} Preliminarily, the issue is whether relator has a plain and adequate remedy at law by way of an R.C. 4123.512
appeal to a court of common pleas.
 {¶ 53} A final decision of the commission involving a claimant's right to participate or to continue to participate in the state insurance fund may be appealed to a court of common pleas. R.C. 4123.512(A); Afrates v. Lorain (1992),63 Ohio St.3d 22. A commission decision does not determine an employee's right to participate in the state insurance fund unless the decision finalizes the allowance or disallowance of the employee's claim. State ex rel. Evans v. Indus. Comm. (1992),64 Ohio St.3d 236.
 {¶ 54} R.C. 4123.512(A) provides that a claimant or an employer "may appeal an order of the industrial commission * * * in any injury or occupational disease case, other than a decision as to the extent of disability to the court of common pleas." The Supreme Court of Ohio interprets this provision narrowly, resolving that the only decisions reviewable on appeal under R.C.4123.512 in a court of common pleas are those decisions involving a claimant's right to participate or to continue to participate in the state insurance fund. Felty v. ATT Technologies, Inc.
(1992), 65 Ohio St.3d 234.
 {¶ 55} In Evans, supra, the claimant, Gordon E. Evans, injured his back in a work-related accident. The commission awarded him TTD compensation. Approximately one year later, Evans suffered an intervening injury when he slipped and fell on ice. The commission determined that the intervening injury substantially aggravated Evans' preexisting work-related injury and, on that basis, denied him TTD compensation and medical expenses incurred after the intervening injury.
 {¶ 56} The commission denied Evans any further appeal. Evans filed a complaint in mandamus in this court alleging that the commission had abused its discretion in denying him TTD compensation and medical benefits. This court held that a writ of mandamus was the appropriate remedy because Evans was not entitled to appeal under R.C. 4123.512.
 {¶ 57} On appeal to the Supreme Court of Ohio, the central issue was whether the commission's order involved Evans' right to participate or to continue to participate in the state insurance fund. Looking at the facts before it, the Evans court went on to find that the effect of the commission's order was to permanently foreclose Evans from receiving any further compensation and benefits for the claim he had filed for the original work-related accident. The Evans court dismissed claimant's complaint in mandamus finding that he had an adequate remedy at law under R.C. 4123.512.
 {¶ 58} The magistrate notes that in cases where the commission has used an intervening injury to deny requested compensation and benefits, courts have sometimes had difficulty in determining whether the commission's decision forecloses the claimant from any further compensation and benefits under the claim. Where the commission's decision is unclear as to whether the intervening injury forecloses all future compensation and medical treatment in the claim, courts have ordered a remand to the commission for clarification of its findings. Daniels v.Bethesda Hosp., Inc. (1997), 121 Ohio App.3d 272; Lindamood v.Residence Inn (Nov. 22, 1996), Montgomery App. No. 15763.
 {¶ 59} Here, any lack of clarity with the SHO order of January 4, 2005, must be resolved in accordance with due process of law.
 {¶ 60} The Due Process Clause of the Fourteenth Amendment to the United States Constitution is applicable, to some extent, in most administrative proceedings. State ex rel. Finley v. DustyDrilling Co., Inc. (1981), 2 Ohio App.3d 323; State ex rel. LTVSteel Co. v. Indus. Comm. (1995), 102 Ohio App.3d 100. Procedural due process at commission administrative hearings includes the right to reasonable notice of hearing as well as a reasonable opportunity to be heard. Id. Reasonable notice of hearing necessarily includes notice of the subject matter of the hearing so that a party may prepare evidence and develop arguments applicable to the subject matter of the hearing. Id. It follows that the commission has no authority to adjudicate subject matter not included in the notice of hearing. Id.
 {¶ 61} As relator points out here, he did not receive notice that the commission might adjudicate the termination of his right to participate with respect to the "allowed back conditions" of the claim. The notices relating to the hearings before both the DHO and SHO do not indicate that the right to continue to participate will be the subject matter to be adjudicated at the hearings. In fact, the hearings were generated by two motions: one filed by relator, and the other by Crown. Crown's September 14, 2004 motion to terminate further chiropractic treatment based upon Dr. Hogya's report does not suggest that Crown was actually seeking to terminate a right to continue to participate in the state insurance fund.
 {¶ 62} Apparently, at the November 12, 2004 hearing, Crown argued, for the first time, that the allowed back conditions be terminated due to an alleged intervening injury. There was clearly no notice to relator comporting with due process that the commission might consider terminating a right to continue to participate.
 {¶ 63} Given the above analysis, even if the language of the SHO order of November 12, 2004 could be interpreted as terminating a right to participate, it must not be given such effect because the commission lacked jurisdiction to adjudicate termination of the right to participate at the November 12, 2004 hearing. Accordingly, it follows that the commission's decision here was not appealable to the court of common pleas pursuant to R.C. 4123.512(A), and that relator's mandamus action is not precluded by an adequate remedy at law.
 {¶ 64} The next issue is whether the commission abused its discretion by denying TTD compensation and chiropractic treatment beyond November 4, 2004, based upon a finding that relator sustained a nonindustrial intervening injury.
 {¶ 65} As previously noted, the denial of TTD compensation and chiropractic treatment beyond November 4, 2004 is premised solely upon Dr. Sauer's November 17, 2004 report, which states in part:
On November 4th, "Mr. Steinbrunner reports that the problem is significantly worse today due to tripping over his dogs. He reports that his cane became entangled with the dog's leashes and he tumbled to the ground. He mentioned that he literally bent his finger backwards trying to catch himself on the way down. He went to the doctors to have it checked out." Due to this fall, he significantly aggravated his lower back.
 {¶ 66} Analysis begins with the observation that, while Dr. Sauer opined that the fall reported to him by relator on November 4, 2004, "significantly aggravated his lower back," Dr. Sauer does not opine that the significant aggravation is an intervening injury that effectively eliminates the allowed back conditions as the cause of disability beyond November 4, 2004. It was the SHO who concluded that the significant aggravation caused by the fall is an intervening injury that "sever[s] disability related to the allowed back conditions within this claim." The SHO's conclusion is, at best, an inference that the SHO drew from Dr. Sauer's opinion of a "significant aggravation."
 {¶ 67} It is settled law that the commission and its hearing officers do not have medical expertise in adjudicating medical issues before them. State ex rel. Yellow Freight Sys., Inc. v.Indus. Comm. (1998), 81 Ohio St.3d 56, 58.
 {¶ 68} Here, the commission denied compensation and benefits beyond November 4, 2004 based upon its medical conclusion that the fall reported to Dr. Sauer on November 4, 2004, was an intervening injury that had the effect of eliminating the allowed back conditions as a cause of disability beyond November 4, 2004. Clearly, Dr. Sauer's report, upon which the commission solely relied, fails to provide the some evidence needed to support the commission's decision.
 {¶ 69} It is important to understand that even a so-called nonindustrial intervening injury to the same body part allowed in the claim does not automatically supersede the allowed body part as a cause of any disability. See State ex rel. Webb v. Indus.Comm. (1991), 76 Ohio App.3d 701. (A knee injury sustained by a claimant while playing touch football was compensable if the injury was caused by a weakened condition of the knee as the result of a prior work-related injury.) See Daniels, supra, at 277, quoting Lindamood, supra:
"* * * The nature of the intervening injury or incident may be of such a character that it would have no effect on possible future benefits for a pre-existing claim. Or it might have that effect, depending upon the facts. * * * The second injury may `intervene' only to the extent that it simply adds to the claimant's medical problems, or it may in fact supersede the original injury and thus terminate future benefits from it."
 {¶ 70} Here, the SHO speculated as to the causal impact of the fall on the disability certified by Dr. Sauer to be causally related to the industrial injury. This was an abuse of discretion. Thus, there is no evidence to support the commission's denial of TTD compensation and chiropractic treatment beyond November 4, 2004.
 {¶ 71} However, the lack of some evidence supporting the commission's denial of TTD compensation and chiropractic treatment beyond November 4, 2004 does not automatically translate to an award of compensation and benefits beyond November 4, 2004. See State ex rel. Lampkins v. DaytonMalleable, Inc. (1989), 45 Ohio St.3d 14, 16-17. Upon a further weighing of the evidence, the commission must determine on remand whether the TTD award and authorization of chiropractic treatment shall be extended beyond November 4, 2004.
 {¶ 72} Accordingly, for all the above reasons, it is the magistrate's decision that this court issue a writ of mandamus ordering respondent commission to vacate the January 4, 2005 order of its SHO to the extent that TTD compensation and authorization of chiropractic treatment are denied beyond November 4, 2004, and, in a manner consistent with this magistrate's decision, enter an amended order either granting or denying compensation and benefits beyond November 4, 2004.