THE STATE EX REL. TRACY, APPELLEE, *v.* INDUSTRIAL COMMISSION OF OHIO;

AUTOZONE, INC., APPELLANT.

[Cite as *State ex rel. Tracy v. Indus. Comm.*,

121 Ohio St.3d 477, 2009-Ohio-1386.]

*Workers' compensation — Abuse of discretion by the Industrial Commission — Court of appeals judgment reversing commission's denial of benefits is affirmed.*

(No. 2007-2376 — Submitted February 17, 2009 — Decided April 2, 2009.)

APPEAL from the Court of Appeals for Franklin County,

No. 07AP-88, 2007-Ohio-5792.

_____

**Per Curiam**.

{¶ 1} AutoZone, Inc. appeals from a judgment issuing a writ of mandamus ordering the Industrial Commission of Ohio to grant appellee Mary J. Tracy's request for temporary total disability compensation. At issue is the effect of a nonindustrial February 2006 incident on the chain of causation between Tracy's previous industrial injury and her post-February disability. Specifically, we must determine whether the commission abused its discretion in declaring that the February 2006 occurrence was a new injury rather than simply an exacerbation of a previous industrial injury.

{¶ 2} Tracy's industrial injury occurred on January 30, 2004, and her claim was allowed for "left shoulder strain; C6-7 herniated nucleus pulposus; C5-6 disc protrusion." In late 2005, she was declared to be at maximum medical improvement for those conditions.

{¶ 3} On January 18, 2006, a visit to her attending physician, Dr. Paul D. Mumma, prompted these observations:

**{¶ 4}** "The patient has persistent and chronic neck pain. There is chronically decreased motion. She has problems with reaching overhead and heavy lifting.

**{¶ 5}** "* * *

**{¶ 6}** "ASSESSMENT: 1) Cervical disk disease secondary to acute herniated nucleus pulposus, job related. 2) We will be arranging vocational rehab and I have given the patient some restrictions on her employment. She is not to be doing any heavy lifting. I would prefer she have a driving job where she does not have to load or unload heavy objects and she should be climbing, reaching down and using upper extremities occasionally, but not repetitively."

**{¶ 7}** On February 6, 2006, Tracy reported to her doctor in considerable physical distress. The doctor's notes reveal the following:

**{¶ 8}** "HISTORY OF PRESENT ILLNESS: The patient comes in after *reinjuring her neck last Thursday while pushing back with her neck against the headrest of her car.* This was sudden. She felt an articulation in her cervical spine and has had severe occipital and cervical pain syndrome ever since. This has developed into severe headaches and has become disabling.

**{¶ 9}** "She is obviously in pain. She does not flex her cervical spine well. She has no arm symptoms. Denies any evidence of radiculopathy or cord symptoms.

**{¶ 10}** "* * *

**{¶ 11}** "ASSESSMENT AND PLAN: 1) Lower cervical spine injury associated with an acutely herniated nucleus pulposus in the past. *I believe she has reinjured her neck.* I am not sure if another MRI will be necessary or not unless we fail to see any improvement." (Emphasis added.)

**{¶ 12}** The symptoms did not abate, and after consultation with a surgeon, it was confirmed that surgery would be required. That surgery was performed on April 25, 2006.

**{¶ 13}** Tracy sought temporary total disability compensation for periods surrounding her surgery. AutoZone objected, claiming that the incident on February 6, 2006, constituted a new, intervening injury unrelated to Tracy's employment. In response, Tracy secured two letters from Dr. Mumma. The first, dated June 10, 2006, stated:

**{¶ 14}** "On 01/30/2004, Ms. Tracey [sic] injured her neck while pulling on a skid at work. She suffered the immediate onset of neck pain radiating into her left arm and crescendoing over the subsequent several days. Since that time MRI scanning has clearly demonstrated a herniated cervical nucleus pulposus.

**{¶ 15}** "* * *

**{¶ 16}** "Ms. Tracey [sic] *did exacerbate her preexisting injury while repositioning herself in her car on 02/06/2006.*

**{¶ 17}** "At that time she felt an increase in pain in her arm and her neck hurt more than usual for a while.

**{¶ 18}** "Ms. Tracy *had a preexisting work-related herniated nucleus pulposus* at C5-6 and C6-7 documented by MRI scanning *prior to her mild exacerbation of this same injury on 02/06/2006.* It was preexisting and mere active pushing on the headrest would not have caused a herniated nucleus pulposus to appear somewhere else. * * *

**{¶ 19}** "There is also compelling evidence that Ms. Tracy is feeling much better. Her arm pain has all but disappeared and her neck pain is much improved following surgery.

**{¶ 20}** "Therefore, I am of the opinion that Ms. Tracy's o*riginal injury of 01/30/2004 was the proximate and sole cause of the neck pain, arm pain, and MRI findings of herniated nucleus pulposus of C5-6 and C6-7.* It is also my opinion that her surgery was medically necessary and performed only as a consequence of her injury." (Emphasis added.)

**{¶ 21}** Dr. Mumma's letter of September 6, 2006, reiterated those conclusions:

**{¶ 22}** "Prior to her surgery this patient had stable physical findings until 02/06/06 when she *suffered a positional injury that evidently exacerbated her work-related injury.*

**{¶ 23}** "* * * Prior to her *exacerbation of injury* Ms. Tracy manifested no neurologic symptoms that would have required surgical intervention and was therefore managed conservatively. This does not ameliorate the fact that she had a work-related injury or was suffering significant pain. This also does not abolish the fact that she has significant cervical spasm, tenderness, and decreased range of motion. Until her postural injury on February 6th, Ms. Tracy had no impending paralysis or loss of function of either upper extremity and was experiencing no spinal cord symptoms. She would still have all the other manifestations of cervical disk injury including muscle spasm, tension headaches, shoulder pain, thoracic spine pain, and decreased cervical range of motion which are all well documented.

**{¶ 24}** "It is my opinion that Ms. Tracy suffers from a progressively herniated nucleus pulposus of C6-7 that ultimately required surgery.

**{¶ 25}** "It is also my opinion that Ms. Tracy's work absences from the date of injury until post surgery were all *necessary and resulted solely from her work-related injury*.

**{¶ 26}** "It is my opinion that Ms. Tracy's chronic occipital cervical headaches are due to muscle spasm and traction as a consequence of her work-related injury to her cervical spine and subsequent surgical intervention." (Emphasis added.)

**{¶ 27}** A district hearing officer granted Tracy's temporary total disability compensation request, but a staff hearing officer reversed:

**{¶ 28}** "The Staff Hearing Officer finds that the injured worker sustained an intervening injury on 02/02/2006 when she was pushing back on the headrest of the seat in her car and re-injured her neck. The Staff Hearing Officer finds that this intervening injury was what caused the injured worker to develop severe tension headaches, to require an updated cervical MRI, and eventually surgery at C6-7 on 04/25/2006. The Staff Hearing Officer relies on the office note of Dr. Mumma (02/06/2006) in this regard, the new MRI (02/15/2006) which was immediately obtained, which shows a significant change in the disc herniation of C6-7, and the fact that the injured worker necessitated surgery after this incident, which was performed on 04/05/2006 when prior to the incident there was no recommendation for surgery, in making this finding."

**{¶ 29}** Further appeal was denied.

**{¶ 30}** Tracy filed a complaint in mandamus in the Court of Appeals for Franklin County, alleging that the commission had abused its discretion in denying her temporary total disability compensation. The court of appeals agreed. It held that the staff hearing officer had inappropriately relied on isolated words in the February 6, 2006 Mumma report and the February 15, 2006 MRI report, having taken that language out of context. The court stressed that there was no medical evidence attributing Tracy's condition to anything other than the industrial injury. *State ex rel. Tracy v. Indus. Comm.*, Franklin App. No. 07AP-88, 2007-Ohio-5792, ¶ 4.

**{¶ 31}** The court granted the writ, and AutoZone has appealed that decision to this court.

**{¶ 32}** The staff hearing officer denied Tracy's motion based on Dr. Mumma's February 6, 2006 office note and the February 15, 2006 MRI report. We must determine whether those documents are evidence supporting the order denying the temporary total disability. The court of appeals held that they were not, and we affirm that judgment.

**{¶ 33}** The commission is exclusively responsible for evaluating evidentiary weight and credibility, and it may draw inferences from that evidence. *State ex rel. Stephenson v. Indus. Comm.* (1987), 31 Ohio St.3d 167, 172, 31 OBR 369, 509 N.E.2d 946; *State ex rel. Lawson v. Mondie Forge*, 104 Ohio St.3d 39, 2004-Ohio-6086, 817 N.E.2d 880, ¶ 34. In this case, the staff hearing officer appeared to infer that a new injury occurred based on Dr. Mumma's February 6, 2006 reference to a "reinjured" neck. We find this to be an impermissible inference because Dr. Mumma has consistently and repeatedly attributed Tracy's symptoms after the February 2006 incident to her industrial injury and has never suggested that a new injury occurred.

**{¶ 34}** Dr. Mumma's April 10, 2006 office note stated that Tracy's current symptoms arose from "her work-related injury." His June and September 2006 letters were more emphatic. He consistently referred to the February incident as an exacerbation of the original injury and numerous times attributed her condition thereafter to the industrial injury. Every express statement on the issue of causation related it to the industrial injury. Dr. Mumma's one-time description of Tracy's neck as "reinjured" cannot, therefore, sustain the conclusion that Tracy's post-February symptomatology was unrelated to her original industrial injury.

**{¶ 35}** The staff hearing officer's reliance on the February 15, 2006 MRI is also tenuous. First, the MRI listed only medical test results and offered no opinion on causation. Second, the staff hearing officer mischaracterized the report by stating that it showed a "significant" change in Tracy's disc condition from that reported in the 2004 MRI. But the later MRI revealed only a "persistence" of the 2004 MRI findings, with "some" progression of a disc herniation that "slightly" impinged on the spinal cord. There was no reference to any "significant" change.

**{¶ 36}** AutoZone persists, arguing that because Tracy's condition was worse after February 2006 than it had ever been, the February 2006 incident necessarily was a new injury. This assertion is untrue. An exacerbation, by definition, is a worsening of the condition. That this worsening was particularly severe does not change that.

**{¶ 37}** AutoZone finally claims that this cause of action is premature because the issue of additional allowance of Tracy's headaches is pending before the common pleas court. This assertion is not persuasive. Tracy's surgery was prompted by a series of symptoms arising from the February 2006 incident, not just the headaches for which she now seeks formal recognition. The allowance or disallowance of occipital headaches is not necessarily determinative of the causal relationship between the original industrial injury and the benefits at issue here.

**{¶ 38}** The evidence cited by the staff hearing officer does not support the denial of Tracy's motion. The court of appeals correctly ruled that the commission abused its discretion, and its judgment is hereby affirmed.

Judgment affirmed.

MOYER, C.J., and PFEIFER, LUNDBERG STRATTON, O'CONNOR, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

_____

Crabbe, Brown & James, L.L.P., and John C. Albert, for appellant.

Larrimer & Larrimer and Thomas L. Reitz, for appellee.

_____